In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 23-3140

MICHAEL COBBS,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:22-cv-3141 — **Sue E. Myerscough**, *Judge*.

_____

ARGUED FEBRUARY 27, 2025 — DECIDED JUNE 26, 2025

_____

Before ST. EVE, LEE, and MALDONADO, *Circuit Judges*.

LEE, *Circuit Judge*. Michael Cobbs pleaded guilty in 2017 to three crimes: attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951; using, carrying, or brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The attempted Hobbs Act robbery served as the predicate crime of violence for the § 924(c) charge.

Four years after the entry of the judgment, Cobbs returned to the district court to collaterally attack his 25-year prison sentence under 28 U.S.C. § 2255. His theory is that his § 924(c) conviction is invalid based on *United States v. Taylor*, where the Supreme Court held that an attempted Hobbs Act robbery is not a crime of violence for purposes of § 924(c). 596 U.S. 845 (2022). The district court denied Cobbs's petition. Because Cobbs admitted to facts that support a conviction on the § 924(c) count as alleged in the indictment before us, we affirm.

**I**

Early in the morning of September 11, 2017, Cobbs entered the Brickstone Restaurant in Bourbonnais, Illinois, with a semiautomatic pistol. He was on supervised release for a previous armed robbery conviction at the time.

Once inside the restaurant, Cobbs used duct tape to bind the hands of several Brickstone employees and took at least one of their cell phones. He then came upon Brickstone's owner, who was in his office counting the proceeds. Cobbs bound the owner with duct tape as well and put the money into the backpack he was carrying. All the while, Cobbs was brandishing the pistol.

As Cobbs was trying to flee the restaurant, he ran into Brickstone's manager, Matthew Offerman. When Offerman tried to use his cell phone to call for help, Cobbs grabbed the cell phone from his hand, and a struggle ensued. Cobbs eventually broke free and ran out the door, but Offerman pursued him. At some point, Offerman tried to tackle Cobbs and was able to wrestle the backpack away from him. But Cobbs escaped.

A short time later, law enforcement officers found Cobbs hiding in a nearby dumpster. He had a roll of duct tape as well as a cell phone belonging to one of Brickstone's employees.

A grand jury charged Cobbs in a three-count indictment. Because the precise language in the indictment is important for our analysis, we recount it here.

Count 1, entitled "Attempted Obstructing of Commerce by Robbery," charged Cobbs under 18 U.S.C. §§ 1951 and 1952 (also known as the Hobbs Act). It alleged that Cobbs, on September 11, 2017:

> unlawfully obstructed, delayed, and affected, and attempted to obstruct, delay, and affect commerce … by robbery … in that [Cobbs] unlawfully took and obtained, and attempted to take and obtain, personal property, including but not limited to, cellular phones and United States Currency, from the persons and in the presence of the owners of the property, against their will by means of actual and threatened force, violence, and fear of injury, immediate and future, to said persons, that is [Cobbs] brandished a firearm as he bound the owners of the property with duct tape and took the property.

Count 2 charged Cobbs with violating 18 U.S.C. § 924(c)(1)(A)(ii). It alleged that Cobbs, on September 11, 2017:

> possessed and brandished a firearm … in furtherance of a crime of violence that was a felony … that is, a violation of Title 18, United States Code, Section 1951, as set forth in Count One of this Indictment.

Lastly, Count 3, not relevant here, charged Cobbs with possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1).

On January 16, 2018, Cobbs appeared before a magistrate judge by consent and pleaded guilty to all three counts. During the hearing, the government recited the elements it had to prove to obtain a conviction for the three counts in the event of a trial. In the process, the government described "[t]he first count being an Hobbs Act robbery in violation of 18 U.S.C. Section 1951, that's obstructing or attempting to obstruct commerce by robbery." The government also specified that it would have to prove that Cobbs "knowingly attempted to obtain money or other property from the victims outlined in the indictment." Cobbs agreed to the government's recitation.

After detailing the penalties associated with the three charges and explaining the sentencing procedure to Cobbs, the magistrate judge discussed Cobbs's appeal rights. The magistrate judge first noted that Cobbs was entering an open plea (that is, Cobbs would plead guilty without the benefit of a plea agreement), and Cobbs's lawyer confirmed that the government had not provided any written plea offers. Then, the magistrate judge told Cobbs that he would have the right to appeal the conviction and the sentence. After that, the government presented the factual basis for the plea. Here too the details matter, and so we present the factual basis here:

> [O]n September 11, 2017, [ ] at approximately 7:45 in the morning, the defendant entered the Brickstone Restaurant in Bourbonnais, Illinois. Once he was inside, he forced two employees into a back utility room; bound their hands with duct tape and put duct tape over their mouths; found another employee, duct taped him, bound him in the same way with duct tape; and then

found the owner who was counting money in the front office. He pulled the chair out from under the owner, and, again, bound the owner with duct tape, and then proceeded to take the money the owner was counting and stuffed it in a backpack. At the same time he was brandishing a Glock, Model 22, semiautomatic pistol. At the same time he was attempting to flee the restaurant, he encountered the manager who he wrestled with. The bag that the defendant was carrying was wrestled away from the defendant and the defendant fled. Within an hour, the defendant was found in the—approximately—in a dumpster, approximately 300 yards away from the restaurant. He had a roll of duct tape in his possession. Alongside him was a cell phone that belonged to one of the employees of the Brickstone Restaurant.

Cobbs then acknowledged that he did what the government said he did.

In the end, the district court sentenced Cobbs to one day of imprisonment as to Count 1 and Count 3 to run concurrently, and 300 months of imprisonment on Count 2 to run consecutively to the one-day sentence for Counts 1 and 3. Cobbs did not appeal.

Four years later, the Supreme Court decided *Taylor*, 596 U.S. at 852, where it held that "attempted Hobbs Act robbery does not qualify as a crime of violence" under § 924(c). *See* 18 U.S.C. § 924(c)(3)(A). The following month, Cobbs filed the instant petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In it, he asserts that the *Taylor* decision renders invalid his § 924(c) conviction in Count 2 for brandishing a firearm during a crime of violence. As Cobbs

sees it, his § 924(c) conviction was predicated on his admission of an attempted Hobbs Act robbery under Count 1. Therefore, he claims, after *Taylor*, his guilty plea to Count 1 does not support his conviction of the § 924(c) violation charged in Count 2.

The district court denied Cobbs's petition. In doing so, the court determined that Cobbs had procedurally defaulted his claim that attempted Hobbs Act robbery does not qualify as a predicate crime of violence under § 924(c). The district court also found no cause for Cobbs's procedural default, and it concluded that he failed to show actual innocence excusing that default. The district court nevertheless granted Cobbs a certificate of appealability, and this appeal followed.

## II

Section 2255(a) permits a federal prisoner to petition for relief "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). When reviewing a denial of a § 2255 petition, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *See Bridges v. United States*, 991 F.3d 793, 799 (7th Cir. 2021) (citing *Martin v. United States*, 789 F.3d 703, 705 (7th Cir. 2015)).

On appeal, Cobbs contests the district court's determination that he procedurally defaulted his *Taylor*-based claim, as well as the district court's conclusion that the default cannot be excused. There is no question that Cobbs procedurally defaulted his current claim—he did not directly appeal his conviction or sentence. *See White v. United States*, 8 F.4th 547, 554 (7th Cir. 2021) (citing *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016)) ("A claim not raised on direct appeal generally

No. 23-3140 7

may not be raised for the first time on collateral review and amounts to procedural default."). Thus, we are left to review whether the procedural default should be excused.

**A**

A petitioner can overcome procedural default by showing "either cause for the default and actual prejudice from the alleged error, or that he is actually innocent." *Yang v. United States*, 114 F.4th 899, 912 (7th Cir. 2024) (quoting *White*, 8 F.4th at 554), *cert. denied*, 145 S. Ct. 1182 (2025); *see also Bousley v. United States*, 523 U.S. 614, 622 (1998). On appeal, Cobbs does not dispute the district court's conclusion that he failed to establish cause.[1] We thus confine our analysis to the actual innocence excuse.[2]

---

[1] Having found no cause for his procedural default, the district court refrained from separately analyzing whether Cobbs was prejudiced. Cobbs likewise does not argue that he was prejudiced on appeal.

[2] Cobbs argues, in the alternative to actual innocence, that his procedural default should be excused to correct a miscarriage of justice. The problem is he did not make this argument to the district court and thus waived it by raising it for the first time on appeal. *See McCoy*, 815 F.3d at 295. Moreover, even assuming that Cobbs had preserved the argument, it is unclear how the argument is distinct from his protestation of actual innocence. Actual innocence and miscarriage of justice are intertwined concepts when it comes to excusing procedural default. *See, e.g.*, *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) ("We emphasized that the miscarriage of justice exception is concerned with actual as compared to legal innocence[.]"); *Dixon v. Williams*, 93 F.4th 394, 403 (7th Cir. 2024) ("A habeas petitioner may use a claim of actual innocence to overcome a procedurally defaulted and time-barred habeas claim, as a way to prevent a miscarriage of justice."), *reh'g denied*, No. 21-1375, 2024 WL 1510579 (7th Cir. Apr. 8, 2024).

Here, Cobbs's claim of actual innocence is based on the Supreme Court's decision in *Taylor*, which resulted in a change in the law underlying Cobbs's conviction in Count 2 under 18 U.S.C. § 924(c). Specifically, in *Taylor*, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a crime of violence under § 924(c)(3)(A). 596 U.S. at 851. This subsection, commonly referred to as "the elements clause," defines a crime of violence as a felony offense that has as an element "the use, attempted use, or threatened use of physical force against the person or property of another." *See* 18 U.S.C. § 924(c)(3)(A).

Measured against the elements clause is a conviction for attempted Hobbs Act robbery, which requires proof beyond a reasonable doubt that a defendant (1) intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) completed a substantial step toward that end. *See Taylor*, 596 U.S. at 851 (citing *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007)).

Comparing the two, the Supreme Court reasoned that "[w]hatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause" because an "intention" to take property by force or threat is no more than an intention, and "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.* (emphasis in original).

Cobbs argues that the change in the law announced in *Taylor* excuses his procedural default through the actual innocence exception by effectively nullifying his § 924(c)(1)(A)(ii) conviction. And, as we have held, "[a]ctual innocence, if

proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or ... expiration of the statute of limitations." *Lund v. United States*, 913 F.3d 665, 667 (7th Cir. 2019) (citation modified); *see also Schlup v. Delo*, 513 U.S. 298, 317 (1995) (holding that a petitioner who procedurally defaults his claims can overcome the procedural bar if he successfully raises a claim of actual innocence—that is, if he "raise[s] sufficient doubt about [his] guilt to undermine confidence in the result"). This is because the actual innocence rule is "grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (internal quotation marks omitted). "To establish actual innocence, 'a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Lund*, 913 F.3d at 667 (quoting *Schlup*, 513 U.S. at 327).

At the outset, Cobbs's invocation of *Taylor* presents two threshold questions. First, can a change in the law—rather than, for example, newly discovered evidence—serve as the basis for the actual innocence gateway to circumvent procedural default? To date, we have declined opportunities to answer this question. *See, e.g.*, *Lund*, 913 F.3d at 667–68 (recognizing that this court has never explicitly held that the actual innocence exception "can be used in situations where a subsequent change to the scope of a law renders the conduct the petitioner was convicted for no longer criminal" and declining to take a position on the issue); *Gladney v. Pollard*, 799 F.3d 889, 897 (7th Cir. 2015) (acknowledging that the petitioner's argument raised a "new question in this circuit" of whether the "actual innocence standard can be satisfied by a change in

law rather than new evidence," but finding that question unnecessary to resolve).

Second, in addition to invoking *Taylor* to circumvent procedural default, Cobbs relies on it to support the merits of his § 2255 petition. This raises the question of whether *Taylor* is available to Cobbs as both his procedural default lifeboat *and* the source of his relief on the merits. Although we have not definitively decided this question either, we have expressed some doubt that actual innocence can serve such double duty where, as here, a habeas petitioner has not presented an underlying constitutional claim. *See Perrone v. United States*, 889 F.3d 898, 903 (7th Cir. 2018); *see also Lund*, 913 F.3d at 668 (noting that the point of the actual innocence exception is "to ensure that federal constitutional errors do not result in the incarceration of innocent persons," which "suggests that the underlying claim must be a constitutional claim, rather than a statutory claim") (citation modified).

As in previous cases, however, we need not answer these thorny questions (neither of which the district court or the parties addressed) to resolve this case. Even assuming, for the sake of argument, that the actual innocence exception is available to Cobbs in the dual manner he suggests, his claim of actual innocence fails (and, thus, cannot excuse procedural default) because Cobbs has not demonstrated his actual innocence as to Count 2 as charged in the indictment.

**B**

To resolve this case, the parties invite us to decide whether the Supreme Court's holding in *Bousley* applies here. In that case, Kenneth Bousley had pleaded guilty to "using" a

firearm in violation of 18 U.S.C. § 924(c)(1).[3] 523 U.S. at 616. Five years later, the Supreme Court held in *Bailey v. United States* that § 924(c)(1)'s "use" prong requires the government to show "active employment of the firearm" such as "brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire" the weapon. 516 U.S. 137, 146, 148 (1995). "[M]ere possession" will not do. *Bousley*, 523 U.S. at 617 (citing *Bailey*, 516 U.S. at 143).

Citing *Bailey*, Bousley sought habeas relief, arguing that "neither the evidence nor the plea allocution" showed a connection between the firearms found in his bedroom and the drugs found in his garage. *Id.* (internal quotation marks omitted). But, because he had failed to challenge the validity of his plea on direct appeal, Bousley had to overcome the barrier of procedural default by demonstrating "cause and actual prejudice … or that he is actually innocent." *Id.* at 622 (citation modified).

The Supreme Court easily dispatched with Bousley's cause arguments but observed that the district court had failed to address Bousley's actual innocence. And so, the Supreme Court remanded the case to permit Bousley to attempt to make a showing of actual innocence to overcome the procedural default of his habeas claim. *Id.* at 623.

---

[3] The relevant subsection provides, in pertinent part, that "any person who, during and in relation to any crime of violence … for which the person may be prosecuted in a court of the United States, *uses or carries* a firearm … shall, in addition to the punishment provided for such crime of violence" be sentenced to certain minimum terms of imprisonment as set forth in the section. 18 U.S.C. § 942(c)(1)(A) (emphasis added).

In the process, the Supreme Court provided some guidance to the lower courts on remand. First, it noted that actual innocence "means factual innocence, not mere legal insufficiency." *Id.* Accordingly, it permitted the government on remand to rebut Bousley's claim of actual innocence with any admissible evidence of his guilt, "even if that evidence was not presented during petitioner's plea colloquy." *Id.* at 624. The Court then delivered the instruction that is the center of this dispute: "In cases where the Government has forgone more serious charges in the course of plea bargaining, [a] petitioner's showing of actual innocence must also extend to those charges." *Id*. In other words, under *Bousley*, to establish actual innocence, a habeas petitioner must prove his innocence as to *both* the offense of conviction *and* any more serious charge that the government relinquished in the course of plea negotiations. *See Lewis v. Peterson*, 329 F.3d 934, 936 (7th Cir. 2003) (citing *Bousley*, 523 U.S. at 623–24).

Employing this framework, the Supreme Court in *Bousley* found no indication that the government had elected not to charge Bousley with "carrying" a firearm in exchange for his agreement to plead guilty to "using" a firearm in violation of § 924(c)(1). *See Bousley*, 523 U.S. at 624. Accordingly, to show actual innocence, Bousley needed to demonstrate only that he had not "used" a firearm as the Supreme Court had interpreted that term in *Bailey*. *Id.*

After *Bousley*, we have observed that the charge the government abandoned in plea discussions need not be more serious than the charge to which the petitioner pleaded guilty. *See Lewis*, 329 F.3d at 937. Rather, "[i]t is enough that it is as serious." *Id.* The idea behind *Bousley*, we said, is that, had the government foreseen the change in the law, "it would not

have dropped the charge and so the petitioner, who we know wanted to plead guilty, would probably have pleaded guilty to that charge instead." *Id.* at 936. Furthermore, if the abandoned charge was more serious or no less serious than one to which the petitioner pleaded guilty, he "would probably have incurred a lawful punishment no less severe than the one imposed on him." *Id.*

All of this to say, as the law stands, in order to establish the actual innocence exception to procedural default after a guilty plea, a habeas petitioner must show that he was actually innocent of the charge to which he pleaded, *and* he must show that he was actually innocent of any charge that the government dropped during the course of plea discussion so long as the dropped charge was more serious or equally serious to the one that was the subject of the plea.

This discussion brings us to the district court's decision in this case. Applying *Bousley* and *Lewis*, the district court concluded that the actual innocence exception to procedural default did not apply to Cobbs's claim, because he had failed to demonstrate that the result of the criminal proceedings against him would have been different had *Taylor* been decided prior to his guilty plea. As the court reasoned, although Cobbs's conviction and resulting sentence was for an attempted Hobbs Act robbery, Cobbs admitted to facts during his change-of-plea hearing that established the commission of a completed Hobbs Act robbery. In the district court's view, had the government foreseen *Taylor*, it would have amended the indictment, charged a completed Hobbs Act robbery, and secured a conviction based on the facts Cobbs admitted, all of which would have resulted in the same outcome for Cobbs.

But, of course, there is a material difference between the situation before us and those contemplated in *Bousley* and *Lewis*. Here, Cobbs entered an open plea, and there is no evidence that the government forwent any charges in exchange for his plea. Nevertheless, the district court dismissed the petition, relying on the principle from *Bousley* and *Lewis* that a petitioner is not entitled to a "windfall" when he has not shown that the result of his criminal proceedings would have been different had the law changed prior to his guilty plea.

But this distinction makes us hesitant to extend *Bousley* and *Lewis* to the facts of this case. *Bousley* itself contains no indication that its logic reaches beyond the plea-bargaining context, and *Lewis*'s reasoning is tethered to concepts intrinsic to dealmaking. Ideas of what the government would or would not have offered, and to what terms a defendant would or would not have agreed are only relevant in the framework of a negotiation. *See Lewis*, 329 F.3d at 936. Similarly, a defendant can only secure a "windfall" if he receives an outsized benefit compared to what he gave up. *Id.* Here, without evidence of any offer made or deal reached between the parties, the bargain-oriented concepts underpinning *Bousley* and *Lewis* have questionable force.

That said, based on the record before us, it is not necessary to decide the applicability of *Bousley* and *Lewis* to the present facts in order for us to conclude that *Taylor* does not excuse Cobbs's procedural default. Cobbs seeks to vacate his § 924(c) conviction in Count 2, arguing that he is actually innocent of that charge. But Count 2 of the indictment charged Cobbs with a violation of § 924(c), predicated on "a crime of violence that was a felony … that is, a violation of Title 18, United States Code, Section 1951, as set forth in Count One of this

Indictment." In turn, the body of Count 1 asserted that Cobbs "unlawfully obstructed, delayed, and affected, *and* attempted to obstruct, delay, and affect commerce … by robbery." In doing so, this language described a completed Hobbs Act robbery as well as an attempted one, and the factual admissions Cobbs made during his plea satisfied both.

Recall that, as part of his plea colloquy, Cobbs acknowledged that he had taken a cell phone from an employee of the Brickstone after binding the individual with duct tape and while brandishing a firearm. By acknowledging these facts, Cobbs admitted that he had taken or obtained personal property from the person of another, against that person's will, by means of actual or threatened force. In other words, he admitted to a completed Hobbs Act robbery. *See* 18 U.S.C. § 1951(b).[4]

---

[4] We note that Cobbs's assault of the restaurant's owner and taking of the restaurant's money also arguably would constitute a completed violation of § 1951, which defines "robbery" to be "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). Although he abandoned the backpack with the money, he took the money from the owner with the intent to permanently deprive the owner of the proceeds. *See Smith v. United States*, 291 F.2d 220, 221 (9th Cir. 1961) (explaining that for a bank robbery conviction, which requires the taking and carrying away of property, the "degree of the taking is immaterial, the least removing of the thing taken from the place it was before with intent to steal it being sufficient" (internal quotation marks omitted)); *see also* 2 Wharton's Criminal Law § 26:15 (16th ed.) ("There is an asportation when the actor carries away the property; any carrying away movement, however slight, is sufficient. Given a taking and asportation, a larceny is committed even if immediately thereafter the defendant abandons

Accordingly, Cobbs's guilt as to Count 2 does not depend on whether he pleaded guilty to a completed or attempted Hobbs Act robbery under Count 1. It is enough that the facts he acknowledged satisfied the allegations in Count 2. In other words, Cobbs admitted that he had committed a completed Hobbs Act robbery, a crime of violence that Count 1 of the indictment "set forth."[5] Thus, the Supreme Court's holding in *Taylor* does not disturb Cobbs's conviction as to Count 2.

We recognize that during the change-of-plea hearing, the parties and the magistrate judge at times referred to Count 1 as attempted Hobbs Act robbery. We also appreciate other indicia in the record, including in the judgment and by way of the parenthetical title to the charge in the indictment, that the prosecution concentrated on the attempt aspect of the charge in Count 1. Still, the focus of Cobbs's habeas claim is Count 2, and he must show that he is actually innocent (legally and factually) of Count 2 to survive procedural default. He cannot do so for the reasons explained.

All told, assuming the actual innocence gateway exception can be based on a change in the law, and that a change in statutory law can simultaneously serve as grounds for the

---

the property or returns it to the owner, as long as the defendant acted, at the time of the taking and asportation, with the intent to permanently deprive.").

[5] The parties dispute whether Count 1 sufficiently charged Cobbs with completed Hobbs Act robbery in addition to attempted Hobbs Act robbery. To Cobbs, the government's endeavor to recast his guilty plea amounts to a constructive amendment to the indictment, especially after the government, in Cobbs's view, had effectively narrowed the indictment by demonstrating its intent to prove only the inchoate offense. Given the language of Count 2, we need not wade into this issue.

No. 23-3140                                                            17

gateway and for relief on the merits, the change in the law announced by *Taylor* does not excuse Cobbs's procedural default. Consequently, Cobbs's petition was properly dismissed.

### III

For these reasons, we AFFIRM the district court's denial of Cobbs's 28 U.S.C. § 2255 petition to vacate, set aside, or correct his sentence.